IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA


**LIBERTY INSURANCE UNDERWRITERS,
INC.**                                                                                               **PLAINTIFF**

v.                                             CIVIL ACTION NO. 2:18-CV-8612-KS-CW

**GUSTAVE J. LABARRE, JR.,** *et al.*                                               **DEFENDANTS**


### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants** Plaintiff's Motion for Partial Summary Judgment [119], **denies as moot** Defendants' Motions to Strike [138] [152] [202], **grants** the parties' Joint Motion to Seal [201], and **denies** Plaintiff's Motion for Preliminary Injunction [191].

### I. BACKGROUND

This case arises from a settlement agreement reached in a complex tort case in Louisiana state court. In 2012, a sinkhole damaged property owned by Defendants, who then filed suit against numerous parties in state court, including Texas Brine Company, LLC, the company which designed, installed, and operated the well that caused the sinkhole. Defendants also named Texas Brine's numerous liability insurers over the years. Plaintiff provided excess liability coverage for Texas Brine in 2012, when the sinkhole first appeared.

In 2017, Defendants entered into a Settlement Agreement with Plaintiff, releasing it from any obligation to them under the 2012 Texas Brine insurance policy.

Defendants also entered into a Tripartite Agreement with Plaintiff and Texas Brine, in which Plaintiff assigned its subrogation and contribution claims against Texas Brine's pre-2012 insurers to Defendants, and Defendants agreed to pay Plaintiff a portion of any sums received from the pre-2012 insurers.

Plaintiff later filed this lawsuit, claiming that Defendants were attempting to settle claims against Texas Brine's other insurers without remitting payment to Plaintiff as required by the Tripartite Agreement. Specifically, Defendants sought to amend their state-court petition to seek a declaratory judgment that they are not liable for any payment to Plaintiff under the Tripartite Agreement. Plaintiff asserted a breach of contract claim, alleging that Defendants and their counsel breached the confidentiality provisions of the Settlement Agreement and Tripartite Agreement. Plaintiff also seeks a declaratory judgment in its favor regarding payment under the Tripartite Agreement. Alternatively, Plaintiff seeks reformation of the Tripartite Agreement and rescission of the Settlement Agreement. A number of motions are fully briefed and ready for review.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT [119]

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must

2

merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Plaintiff seeks summary judgment as to its claim for a declaratory judgment that Defendants are obligated, under the terms of the Tripartite Agreement, to pay Plaintiff the first $5.0 million received from Texas Brine's pre-2012 insurers, an additional $1.5 million if such recovery reaches $21.5 million, and an additional $1.0 million if it reaches $35.0 million.

3

### A.   *Res Judicata*

Defendants argue that this issue – the interpretation of the Tripartite Agreement – has already been addressed by a Louisiana state court, and that the state court's judgment has preclusive effect here.

"[T]he preclusive effect of prior state court proceedings on federal proceedings is determined by the treatment those state court proceedings would receive in the courts of the state . . . in which those proceedings were held." *Norris v. Hearst Trust*, 500 F.3d 454, 460-61 (5th Cir. 2007). For a prior judgment to have preclusive effect under Louisiana law, it must be "between the same parties." LA. REV. STAT. ANN. § 13:4231; *see also Smith v. Shelter Mut. Ins. Co.*, 768 F. App'x 171, 173 (5th Cir. 2019); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 437 (5th Cir. 2000). The party arguing for res judicata has the burden of proof. *Greer v. State*, 616 So. 2d 811, 815 (La. Ct. App. 1993). "Any doubt as to compliance with the requirements of res judicata is to be resolved in favor of maintaining the second action." *Williamson*, 224 F.3d at 437.

Defendants have not demonstrated that the state-court judgment was "between the same parties." The judgment clearly states that it was "in favor of [Defendants] and against Texas Brine." Exhibit E to Supplemental Opposition at 6, *Liberty Ins. Underwriters, Inc. v. Labarre*, No. 2:18-CV-8612-KS-CW (E.D. La. May 28, 2020), ECF No. 193-1. Defendants' counsel even stated in a letter to the state

4

court[1] that "[n]othing contained in the . . . Judgment has the effect of, nor is intended to, adjudicate claims against Liberty . . . ." *Id.* at 4. Contrary to Defendants' arguments in briefing, the state court did not render any declaration of Plaintiff's rights. Therefore, this Court will not grant preclusive effect to the state-court judgment.

## B.   *The Tripartite Agreement*

Under Louisiana law, the goal of contract interpretation is "determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. "The language of the contract is the starting point for determining that common intent." *Acadian Diagnostic Labs., LLC v. Quality Toxicology, LLC*, 965 F.3d 404, 409 (5th Cir. 2020). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046. "The words of a contract must be given their generally prevailing meaning," LA. CIV. CODE ANN. art. 2047.

In the Tripartite Agreement, the parties agreed that "[i]n exchange for the transfer of [Plaintiff's] rights as set forth in Paragraph 5 below, and the agreement by [Plaintiff] not to pursue any subrogation, contractual, or other rights to recover against AIG, Zurich, related entities, and other pre-2012 insurers or any other party as insurers of Texas Brine for pre-2012 collective insurance," Defendants "will remit

---

[1] Defendants' counsel drafted the judgment in question. Moreover, Plaintiff was not a party to the hearing in which the state court provided a ruling, and it does not appear that Texas Brine offered any meaningful opposition to Defendants' position.

5

the first $5 million received from AIG, Zurich, related entities and/or other pre-2012 insurers to LIUI within seven days of receipt." Exhibit B to Motion for Partial Summary Judgment at 7, *Liberty Ins. Underwriters, Inc. v. Labarre*, No. 2:18-CV-8612-KS-CW (E.D. La. May 1, 2019), ECF No. 119-2. Defendants also agreed to "remit an additional $1.5 million" to Plaintiff "after recovery of a total of $21.5 million from AIG, Zurich, related entities, and/or other pre-2012 insurers," and "an additional $1.0 million . . . after recovery of a total of $35 million . . . ." *Id.*

Paragraph 5 describes the rights Plaintiff assigned in exchange for the payment. Beyond the potential payment described above, Plaintiff "shall recover no more from any party or insurer," and it "assign[ed] any and all of its subrogration rights against Texas Brine's pre-2012 insurers" to Defendants. *Id.* at 8. Plaintiff also assigned to Defendants and Texas Brine "all of its contribution and contractual rights against Texas Brine's pre-2012 insurers . . . ." *Id.* "If both [Texas Brine and Defendants] cease to pursue the rights assigned by . . . Paragraph 5, such rights revert to" Plaintiff. *Id.*

Plaintiff and Defendants agree that the Tripartite Agreement is unambiguous, but they disagree as to what it actually says. Plaintiff contends that the Tripartite Agreement unambiguously provides that Defendants must "remit the first $5 million received from AIG, Zurich, related entities and/or other pre-2012 insurers," without limiting Defendants' payment obligation to their recovery on any specific rights or claims.

6

In response, Defendants argue that the Tripartite Agreement unambiguously obligates them to "remit the first $5 million received from AIG, Zurich, related entities and/or other pre-2012 insurers" in satisfaction of the claims which Plaintiff assigned in Paragraph 5 of the Tripartite Agreement. Defendants contend that, following execution of the Settlement Agreement and Tripartite Agreement, they had two sets of claims: their own claims against the pre-2012 insurers for damages ("Subsidence Claims"), and Plaintiff's assigned subrogation and contribution claims against the pre-2012 insurers ("Assigned Claims"). Therefore, Defendants argue that they do not have to remit any funds to Plaintiff which they recovered in settlement of their own "Subsidence Claims."

The problem for Defendants is that the Tripartite Agreement makes no such distinction. Defendants coined the phrases "Subsidence Claims" and "Assigned Claims" in their briefing before this Court. These terms do not appear in the Tripartite Agreement. Instead, the Tripartite Agreement specifically provides: "[Defendants] will remit the first $5 million received from AIG, Zurich, related entities and/or other pre-2012 insurers to [Plaintiff] within seven days of receipt." Exhibit B [119-2], at 7. The contract's plain language unambiguously provides exactly what Plaintiff argues it does: Defendants must give Plaintiff the first $5.0 million they receive from Texas Brine's pre-2012 insurers, regardless of the claims settled, as well as additional sums if the recovery exceeds certain amounts.

Regardless of the contract's language, Defendants' interpretation just doesn't

7

make any sense when considered in the context of this case's background. Defendants themselves represented in briefing that "[n]umerous obstacles were encountered" during settlement negotiations among Plaintiff, Texas Brine, and Texas Brine's other insurers. Opposition to Motion for Summary Judgment at 146, *Liberty Ins. Underwriters Inc. v. Labarre*, No. 2:18-CV-8612-KS-CW (E.D. La. June 19, 2019), ECF No. 146. According to Defendants, "Texas Brine's pre-2012 insurers denied coverage for property damage resulting from the 2012 sinkhole and refused to participate in the mediation." *Id.* It is logical, therefore, that Plaintiff would offer more to settle Defendants' claims against the 2012 policy in exchange for an agreement that Defendants reimburse Plaintiff if they were able to collect from the pre-2012 insurers who refused to participate in the mediation or kick in funds to help settle the case.

Defendants' interpretation would render the Tripartite Agreement superfluous, providing no practical benefit to either party. According to Defendants, they contracted to receive an assignment of subrogation and contribution claims that they had no reason to pursue, in light of their own "Subsidence Claims." Moreover, by Defendants' logic, Plaintiff gave up its subrogation and contribution claims against the pre-2012 insurers in exchange for an agreement to share in the recovery on such claims – even though Defendants had no reason to pursue them.

Defendants also argue that Plaintiff's interpretation would render the Tripartite Agreement null and void because it would constitute an agreement by

8

Plaintiff, Defendants, and Texas Brine to defraud Plaintiff's excess insurers insofar as it provides that Plaintiff, Defendants, and Texas Brine agree that any payments remitted pursuant to the Tripartite Agreement "do not refresh the limits" of the subject policy issued by Plaintiff. Exhibit B [119-2], at 7. This argument actually bolsters Plaintiff's interpretation because the Tripartite Agreement explicitly contemplates that Plaintiff's excess insurers may come after any funds recovered from the pre-2012 insurers. In paragraph 6, the parties named Plaintiff's excess insurers and agreed that all three parties – Plaintiff, Defendants, and Texas Brine – would share the potential liability in the event the excess insurers later argued that Plaintiff's policy was not exhausted on account of the payments made under the Tripartite Agreement. *Id.* at 8-9. Defendants have not demonstrated that there is anything illegal or untoward about this plan.

For all these reasons, the Court finds that the parties to the Tripartite Agreement intended for Defendants to pay Plaintiff the first $5 million recovered from the pre-2012 insurers, and additional sums if the recovery exceeds certain amounts, regardless of whether the recovery was on the subrogation and contribution claims assigned in the Tripartite Agreement or Defendants' own claims for damages to their property. The Court **grants** Plaintiff's Motion for Partial Summary Judgment [119].

### III. MOTIONS TO STRIKE [138] [152] [202]

The Court **denies** Defendants' Motions to Strike [138] [152] [202] **as moot**.

The Court addressed Plaintiff's Motion for Partial Summary Judgment [119] without considering the disputed exhibits.

## IV. MOTION TO SEAL [201]

The Court **grants** the parties' joint Motion to Seal [201] their Partial Consent Judgment [198]. The document shall be restricted to access only by the Court and parties.

## V. MOTION FOR PRELIMINARY INJUNCTION [191]

Plaintiff seeks a preliminary injunction ordering Defendants' counsel to (1) render an accounting of any settlement funds received on behalf of their clients from Texas Brine's pre-2012 insurers in the state-court case, and (2) to hold and safeguard that portion of the settlement funds subject to Plaintiff's claims in this case. The parties reached a Partial Consent Judgment [198], which was entered by the Court on June 2, 2020. Therein, the parties agreed that Defendants' counsel would hold and safeguard any funds subject to Plaintiff's claims in this case until the Court orders otherwise or a final settlement is reached among the parties. The parties also agreed that Defendants' counsel would provide a full accounting of any and all settlements with Texas Brine's pre-2012 insurers in the state-court case.

Therefore, the parties have resolved all aspects of the Motion for Preliminary Injunction [191] except for one: whether Defendants' counsel must produce full and unredacted copies of any settlement agreements with Texas Brine's pre-2012 insurers in the state court case. Defendants have not filed a response to the Motion for

Preliminary Injunction [191], and the Court does not know the basis of their objection to production of the settlement agreement with the pre-2012 insurers.

To obtain a preliminary injunction, "the plaintiff must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014). "A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012).

Plaintiff argues at length that it would be irreparably harmed if Defendants' counsel distributes any settlement funds from the pre-2012 insurers to Defendants, but Plaintiff has not demonstrated that it would be irreparably harmed if the Court does not order Defendants to immediately produce an unredacted copy of their settlement agreement with the pre-2012 insurers. Therefore, the Court **denies** this aspect of Plaintiff's Motion for Preliminary Injunction [191], and it **denies** the remainder of the motion **as moot** in light of the parties' Partial Consent Judgment [198]. This ruling has no bearing on the parties' discovery obligations and/or any discovery disputes that have or may arise.

## VI. CONCLUSION

For the reasons provided below, the Court **grants** Plaintiff's Motion for Partial Summary Judgment [119], **denies as moot** Defendants' Motions to Strike [138] [152] [202], **grants** the parties' Joint Motion to Seal [201], and **denies** Plaintiff's Motion for Preliminary Injunction [191].

Defendants' objections [141] [142] [143] to the Magistrate Judge's prior discovery orders [125] [127] [129] appear to be moot in that the motion to dismiss/abstain is no longer pending. It is not clear from the docket whether the parties have resumed discovery. Therefore, the Court also orders the parties to contact the chambers of the Magistrate Judge to schedule a case management and status conference to discuss the entry of a scheduling order pursuant to Local Rule 16.1 and Rule of Civil Procedure 16(b).

SO ORDERED AND ADJUDGED this 9th day of September, 2020.

>        /s/      Keith Starrett
> KEITH STARRETT
> UNITED STATES DISTRICT JUDGE